That wasn't very good. This is Ashcroft. Yes, your honor, I'm available. Can you hear me? Yes, we can. Judge Clifton, Judge Noonan and I, Judge Reinhardt are all here as his government counsel, who is not clearly not. Oh, yes. Jacqueline Ariane. Right. Right. Well, thank you very much. Dryden Dryden Dryden. That's not very hard. Dryden. OK. It's just the name I have here doesn't pay a lot of resemblance to that. OK. All right. Mr. Nelson. Yes, your honor. Let me proceed. May it please the court. My name is Douglas Nelson on behalf of the petitioner. I came prepared today to argue two things in this case. First, as to whether this court should grant my motion to hold the case in a ban while the Board of Immigration Appeals decided my motion to reopen. Second, to decide whether the respond or the petitioner is eligible for adjustment. I'm sorry, eligible for asylum and deserving of that relief. Now, I was informed this morning by government counsel who was kind enough to call me and tell me that my motion to reopen before the board has been denied. I have not seen that decision, but quite frankly, I am a little dismayed at the board's denial of the motion to reopen when this client is clearly eligible for adjustment of status. She is married to a U.S. citizen. She entered the country lawfully. She has no criminal record. She has a U.S. citizen child. And I just learned within the last week that she's expecting a second child. So regarding the motion to reopen, maybe we can discuss with government counsel a little bit later as to why it was denied. Because I just don't have the reason to be happy to know that the board is sympathetic to the problem, but they're not going to do anything about it. The board denied it on this first. If you haven't seen the decision, they denied it first because the motion to reopen is not timely. It has to be had to be filed by March 19th, 2003, wasn't filed till May 14th, 2004. And then they so it was filed out of time. But then they said that you the respondent wishes to adjust her status and request the sua sponte reopening of her motion, in which case the time wouldn't limits wouldn't apply. They say while the board retains limited discretionary powers under the regulations to reopen or reconsider cases on its own motion, that power allows the board to reopen proceedings to a spotty only in exceptional situations, while with the sympathetic to the respondent situation, they don't find it merits this relief, whatever. That's what they say. So now you know what the board. Thank you, Your Honor. I will study that and take a further look at it. And hopefully we won't have we can resolve it without having to take that on the field, too. So the question before this court now is whether the applicant is deserving of asylum and whether she qualifies for such relief. Now, I think that we have aptly demonstrated the facts in our brief and in the government's brief. And I think that I have demonstrated substantial evidence that compels a contrary result to the immigration judge's decision. The judge largely relies upon what he perceived as a material inconsistency in the respondent's application. I don't believe it's a material inconsistency. I think it's an omission. What I'm referring to is the petitioner's failure to mention that two brothers and a sister had joined the guerrilla fighters of the Yale F in the 1970s and that one of her brothers was killed in 1979. Now, first, these types of omissions are typical for post-A applicants. Indeed, she should have corrected it when she had counsel. She was represented by somebody else at the merits hearing. But she didn't correct it. And there's no explanation in the record why that counsel did not correct it. But there's three things which would allow the judge to accept this new information and overcome the omission. First, the applicant testified that she thought she could explain her case when asked. Second, she testified that she only wrote about her personal experiences or her personal history. And she apologized for not making the changes sooner. But most importantly, and the third aspect, is that her explanation or the new material was plausible and consistent with country conditions and consistent with her claim. Her family was involved in the ELF just as she was. Yes, she omitted that fact, but by adding it, it's completely plausible with the rest of her claim. And it should not be considered a material inconsistency, but rather an omission. Second, the judge denied in large part because he said there's no indication that the Airtrain government officials knew of my client's involvement in the ELF. Well, this is another typical problem in asylum claims. We don't have the luxury of bringing the persecutor to the stand and having that person testify for their motives and reasons for persecuting the applicant. But we can infer that the government knew of her involvement by the following facts. First, her family's involvement in the ELF. Second, she passed out flyers supporting the ELF. Third, she collected contributions from the villages in support of the ELF. She testified that her sister was persecuted in prison and harmed under what she believes was a case of mistaken identity, that the government was, in fact, after my claim, but they mistakenly took my sister. Moreover, the respondent left the country for 11 or 12 years, and upon return for a short span of two months, she immediately had the feeling that she was being surveilled. She met with other members of the ELF, and those two members of the ELF were later picked up and arrested. People came to her house, her mother's house, and interrogated her as to her involvement in the ELF. And they also interrogated her mother and asked her mother who my client associated with during her visit. Now, these persons didn't announce themselves as being government officials, but I think it's reasonable to infer that they were. Who else would keep tabs on this respondent for 11 or 12 years other than the government, a government that is known and has been proven by substantial evidence in the record that persecutes persons of the opposition? Now, what is extraordinary about this case in the respondent's favor is that usually an applicant for asylum does not have any more corroborating evidence than their own testimony and country conditions. In this case, the petitioner brought Mr. Muelma to, a member of the California branch of the ELF, a U.S. citizen who was originally from Eritrea, and he testified that the documents the petitioner presented proving her membership in the ELF were consistent with the documents that he had seen. Now, he's not an expert in documents. That type of expert apparently, I guess, was not available, but he says that the documents do match what he's seen. Second, he also confirmed that returning ELF members, members who returned to Eritrea, are automatically surveilled, considered traitors, and imprisoned. Now, those facts alone are sufficient to find that there's a 10% chance or more that the respondent would be persecuted upon return. And it is my understanding that under the Ninth Circuit, a chance of as little as 10% is sufficient to prove a well-founded fear of future persecution. Now, you'll have to forgive me because I don't have a clock before me, but I have some other facts that I think are important to show that the judge's reasoning was flawed in this case. Can you tell me what time it is? You have two minutes left. Thank you. The judge assumed facts that were not in evidence, and he engaged in conjecture on portions of the testimony that were completely ancillary to the claim. For example, he said that the Saadi family that was employing the petitioner paid an expensive airfare to bring her to the United States. And he questioned, why would the family just abandon her after she got here? Well, the term expensive is a relative term. An airfare from Saudi Arabia to Las Vegas might be expensive to me or the immigration judge, but not necessarily to a Saadi family that had a chauffeur and limousine, a live-in nanny, and brought their whole family across the world to Las Vegas. That's just another example of how the immigration judge employed flawed reasoning in support of his claim and in support of his decision. I suppose I have maybe a minute left, and I'd like to reserve that time. Thank you. May it please the Court. My name is Jacqueline Dryden, and I represent the government of the United States. This is an immigration case in which the petitioner presented inconsistent, discrepant, and implausible testimony in support of her claim that she was persecuted in and will be persecuted if she returns to Euretria. Substantial evidence supports the immigration judge's adverse credibility finding, and this Court should not disturb that finding because there are specific and cogent reasons for it. In this case, the immigration judge provided a plethora of specific and cogent reasons to support his adverse credibility finding. First and foremost, the immigration judge noted that petitioner gave two different versions of testimony as to whether or not she even participated in ELF activities during her 11 years in Saudi Arabia while she was working as a housekeeper. On direct examination, she said that the family allowed her to attend meetings on her day off, even though the ELF was an illegal party in Saudi Arabia, and that she received mail and faxes pertaining to the ELF at the compound or home where she was working. On cross-examination, she proceeded to disavow that prior testimony and told the immigration court that she told the family that she was just visiting friends on her days off when she had otherwise previously explained that she was participating in the ELF. A second part of the immigration judge's adverse credibility finding was the petitioner's failure to include information on her asylum application that two of her brothers and one of her sisters was involved in the ELF, that one of her brothers was killed. Now, I know that this court is concerned with information not being included in an asylum application and then testimony later coming about that. However, I think that this is a very critical aspect of the immigration judge's adverse credibility finding because the petitioner claims that it was because of what happened to her brother that she joined the ELF. So it does form the heart of her asylum application. It was omitted from her asylum application, and therefore it's important that the court understand this. Petitioner claims that she merely lacked an understanding of the immigration law when she initially filed her asylum application, and this should excuse the omission of that critical point. However, as pointed out in the government's brief, the petitioner has 60 days, more than 60 days actually, to amend her asylum application, and the immigration judge specifically asked whether or not she went over that application with her attorney prior to the immigration judge swearing the petitioner under oath as to its contents. The third point that I want to point out is that petitioners spend a great deal of time in Ethiopia and Eritrea without being harassed, much less persecuted. And in fact, petitioner admits that she did not participate with the ELF from 1986 to 1988 during the time that she was in Ethiopia. One point I do want to make clear is that assuming that this Court should find that the petitioner did provide credible testimony in support of her claim, it should still deny petitioner's application for asylum, because she abandoned any challenge to the immigration judge's no past persecution and no well-founded fear of future persecution in her brief to this Court. And therefore, this Court is without jurisdiction to consider those any challenges to it now. Finally, with regard to the motion to hold an abeyance that Petitioner's Counsel initially opened with, that issue is moot because as I presented the documents to you earlier this morning, the Board issued its decision denying her motion to reopen two days ago, and I apologize for not getting it to you in a proper format. I was traveling yesterday. Petitioner is still in a position to file another petition for review of the Board's decision, so of that August 2nd, 2004 decision. So she's not... You didn't join in the motion to reopen. Why didn't you? I'm only representing the agency that did not do it. Why didn't the INS join in the motion to reopen? Right. I don't know the underlying facts why the agency didn't join in, but I think there is governing case law that, well, it's actually clear from the Board's decision that the Petitioner did not make a timely motion to reopen with the Board, and she's regulatorily barred from a grant. Well, the timely means she can't do it herself. That's why either the agreement to the agency or the BIA is to respond to the actions required. So, okay, we know it's untimely. I think the question being posed is do you know why the agency declined to join in the motion under circumstances where the entitlement at this point to adjustment of status seems uncontested? I wouldn't say that adjustment of status is uncontested at this point. The Board still needs to review. The Board, had a timely motion been made, would have had to review the adjustment application on the merits. I don't know if at that point my client would have decided that this was a worthy application. Why don't you know? Because this is your case. Have you been staying with this case, or did you step in this morning? To be quite honest, Your Honor, I was given this case on Friday afternoon. I won't say that you're personally responsible, but the agency is. Here's someone married to someone who has status as a citizen. What's the point of deporting her? Well, Your Honor, the Petitioner married her U.S. citizen husband while she was in removal proceedings. She knew that there was a possibility that she could not remain in the United States. Well, that's true. She now has two American children. She has one American child, and simply having an American U.S. citizen child doesn't Is she pregnant? She's pregnant with her second child. Oh, well, we consider that a human being, right? That's not the issue before the court, Your Honor. As a representative of the government, what sense does it make to deport the mother and wife of U.S. citizens? The greater sense that it makes to the government is that there's an orderly process for a father. The daughter is more important. I thought this was a government committed to family values. Your Honor, I think that overstepping Isn't this government committed to family values? There is a – the immigration laws speak to family unity. However, the immigration laws also speak to not violating, overstaying visas to come into the United States. And that's more important than keeping the family together? In this case A little bureaucratic rule is more important than keeping a husband and wife and child together? There's no reason that the husband cannot return to Euretria with his wife. He can do so. Where does he come from? He's a United States citizen. There's nothing in the record to indicate Explain this to a compassionate conservative. It seems a very strange attitude for the government to take. And you happen to be the unfortunate representative of that government. I don't think it's a stranger. I think it's a consistent position that the government I think you're right. It's consistent. I'm sorry, Your Honor? I said you think it's a wonderful bureaucracy. Anyway, the issue in this case is the asylum claim and the adjustment of status. But you are now representing to us that she will be able to petition. Yes, Your Honor. There's no barrier to a petition for reopening. She can petition for review of the – for a review of that decision. Review of what? You mean to us? Yes, Your Honor. Of the board's August 2nd, 2004 decision. The problem is that's a discretionary decision over which we have no jurisdiction. Yes, Your Honor. The second part. The second part is the first part was it was denied on the grounds of its untimely. That's appealable. I don't know on what theory they could appeal, but I guess they still can appeal it. Yes, Your Honor. The second part, they could appeal on some due process argument, but I don't know quite what it would be. I mean, but the – but is that really a serious answer to this Court? A U.S. citizen husband can join her in this distant African country? I – I – Is that seriously? I'm very serious in my response, Your Honor. He can do so. Anyway, turning back, this is – the petition for review concerns the petitioner's asylum application. And as I pointed out earlier in the case that I argued, there's been two new decisions governing this Court's standard of review for reviewing an adverse credibility determination. And those two cases are Taha at 362 Federal 3rd, 632, and Singh, 2004, Westlaw 1066983. Are there any further questions, Your Honor? May I conclude? This record does not compel a finding that petitioner testified credibly in support of her applications. Moreover, she abandoned any challenge to the Board's alternative finding that she did not suffer past persecution nor has a well-founded fear of future persecution. So if she won on credibility and the judge was wrong in denying her and finding her not credible, they just wasted their time filing this brief because it wouldn't do them any good. Exactly, Your Honor. There's two prongs to satisfy in an asylum application. One is that the alien – well, three, but two at issue here. One is that the alien testified credibly in support of her claims. And second, that she merits as a matter of statute that she would – that she established this past persecution of well-founded fear. The whole appeal was a total waste. Yes, Your Honor, it is. Because they didn't raise the second issue. Exactly, Your Honor. And that issue is dispositive of her case. Accordingly, this Court should affirm the Board's denial of petitioner's application and deny this petition for review. Thank you very much. Thank you. Do I have time for rebuttal? Yes, you do. First, regarding this issue of well-founded fear of future persecution and past persecution, it is mentioned on pages 6 and 7 of her brief. It may not be fully argued as to the government's liking, but it does – it is mentioned that she is seeking asylum based on one of those two grounds. Second, regarding the government's opposition to our motion to reopen, they opposed it for the same reasons that they are opposing this appeal. They believe that the respondent did not testify credibly. And those are the reasons given for opposing our motion to reopen. Third, we do have an alternative remedy by petitioning this Court again regarding the motion to reopen. Although this Court cannot review a discretionary decision, I do raise in my motion to reopen the fact that the regulations are unclear as to when a timely filed motion to reopen must be received. And I can expound upon that in the future, but I certainly hope that's not my choice. I think it's interesting that the government supports what they've done in this case. When you consider that if she's denied relief, she will have to go back to the country where she fears persecution in order to obtain a visa, an immigrant visa to return. And if the government doesn't do the work in this United States and doesn't process her application for adjustment of status here, then it falls upon the Department of State to do so. There certainly is no savings by compelling this woman to leave the country, possibly abandon her spouse for six months or longer, and forcing her to go back to her country to apply for an immigrant visa. This case can be wrapped up quite simply by finding that the immigration judge's decision was wrong and that we have provided substantial evidence proving that she is deserving of asylum. Thank you very much. Thank you, counsel. The case just argued will be submitted. The Court will stand in recess for the day. Thank you. All rise. This court will recess and stand adjourned.
judges: Reinhardt, Noonan, Clifton